607 P.2d 1314

**Beverly A. FULLER,
Plaintiff-Respondent,**

v.

**C. Bruce FULLER, Defendant-Appellant.**

**No.13066.**

Supreme Court of Idaho.

March 18, 1980.

Charles E. Mooney of Lyons, Mooney, Bohner & Munson, Boise, for defendant-appellant.

Kristena K. Beito of Taylor & Hollifield, Twin Falls, for plaintiff-respondent.

McFADDEN, Justice.

This is an appeal from an order by the district court modifying a divorce decree of the parties by increasing the child support payments to be made by the defendant-appellant to $75.00 per month for each of the two children of the parties. The order of modification is affirmed.

In 1969, the plaintiff-respondent (Beverly Fuller) and the defendant-appellant (Bruce Fuller) were divorced. Respondent received custody and control of the two minor children of the parties. Appellant was ordered to pay $140.00 per month per child in support. In 1975, upon petition by appellant, an order was entered modifying the support obligation by reducing the pay-

ments to be made for each child to $25 per month. No further changes were made until the present proceeding was initiated by respondent filing a motion for modification to increase the support payments for each of the two children.

In May, 1978, respondent moved for a modification of the divorce decree seeking an increase of the monthly payments from $25 to $75 per month for each child on the ground of a permanent, material and substantial change of circumstances since the previous modification of the decree. This motion was accompanied by an affidavit by respondent which in summary recited that the original decree of divorce had been entered June 4, 1969, under which appellant was to pay $140 per month per child for their support; that at that time appellant was earning approximately $800 to $1000 per month; that in January, 1975, an order was entered reducing the child support payments to $25 per month per child; that the reduction was in large part due to the medical problems suffered by the appellant; that surgery for the problem appeared to be successful to the best of affiant's knowledge and the medical problems and expenses were no longer present; that respondent, the affiant, was employed earning $3.93 per hour, seven and a half hours per day five days a week, and she had no other income except the $25 per month per child; that she was unable to discover the present nature of appellant's employment but that she had been told he was working full time; that the expenses of the two minor children, boys 13 and 11 years of age, require increased expenditures for their support due to their ages, and that she had another child solely dependent upon her wages.

Respondent also presented a form of an order to show cause to the trial court for execution. This order, which the trial court signed, required appellant to appear before the court on June 9, 1978, to show cause why the child support should not be increased to $75 per month per child. The order to show cause also advised appellant that under the provisions of I.R.C.P. 6(c)(3) that if he intended to produce testimony

and evidence at the hearing or to cross-examine respondent or her affiants, he must give twenty-four hours written notice to the court and counsel. The order also provided that respondent will produce testimony and evidence at the show cause hearing and will cross examine appellant and any other affiant.

The order, together with the motion for modification of the divorce decree, affidavit and notice of hearing, and order to show cause were served by mail on the defendant on May 12, 1978.

At the hearing held on June 23, 1978, the appellant appeared by counsel. The trial court noted that appellant had not filed with the court any notice of intention to cross examine or produce testimony. And, although the appellant did not file any counter-affidavits, he did, by his counsel, advise the court that he resisted the motion. The trial court, after hearing argument by counsel, granted the motion and stated "[t]he defendant will be required to contribute towards the support of those minor children at the rate of $75 per child per month." Counsel for respondent was directed to prepare the necessary order, and the order was signed by the court on June 26, 1978.

■ Appellant appealed from the order increasing the child support payments. He contends that the order to show cause was invalid because (1) there was no "application" and (2) the supporting affidavit was insufficient to meet the requirements of the Idaho Rules of Civil Procedure. Where, as here, the appellant had already appeared in the action by seeking the prior modification, an order to show cause is simply a notice of motion. It is in the nature of a citation to a party to appear at a stated time and place and to show why the requested relief should not be granted. *Sturm v. Sturm*, 138 Cal. App.2d 25, 291 P.2d 527, 529 (1955). *See Berry v. Board of Parole*, 148 Colo. 547, 367 P.2d 338, 339 (1961). I.R.C.P. 6(c)(2) provides "[a]ll applications for an order to show cause must be accompanied by an affidavit . . . ." However, the rule does not define what constitutes an "appli-

cation" nor is there any case law on the subject. It seems evident, though, that the presentation to the court for signature of an order to show cause accompanied by a motion for modification of decree of divorce, an affidavit in support of the motion, and notice of hearing, as was done in this case constitutes an "application" within contemplation of the rule. The trial court recognized it as such when it executed the order to show cause. The claimed deficiency, if any, in a formal request could not have confused the appellant as to the relief sought, for the documents were clearly labeled and the request well outlined. *See Sturm v. Sturm, supra,* 291 P.2d at 529. Reasonable specification is all that is required in order that the opposing party cannot assert surprise or prejudice. *Patton v. Patton*, 88 Idaho 288, 292, 399 P.2d 262, 264–65 (1965).

■ The appellant also contends that the order was invalid because the supporting affidavit did not set forth the financial conditions of each party with specificity as provided in I.R.C.P. 6(c)(2). The rule only requires a prima facie showing for the issuance of such an order. The affidavit presented the financial condition of the respondent in sufficient detail, and as much information as reasonably could be ascertained about the appellant. If appellant believed that the affidavit was insufficient or the application improper it was incumbent upon him to object by motion or affidavit.

■■ As pointed out, the trial court did not allow the appellant to produce any evidence at the hearing on the order, but the trial court considered the issue as presented by the respondent's affidavit, motion for modification, and order to show cause, against which no counter-affidavit had been submitted by appellant, nor had any notice been given by him of his election to "produce testimony and evidence at the hearing, or to cross-examine the adverse party or his affiants." As previously pointed out, I.R. C.P. 6(c)(3) requires one intending to oppose the order by presentation of testimony or cross-examination of the adverse party to

give at least twenty-four hours notice of that intent. The appellant had ample time between the notice of the hearing and the hearing date given by such notice. The order to show cause contained explicit directions that twenty-four hour advance notice was required of one's intention to oppose the motion by presentation of witness testimony or cross-examination of the adverse party or his affiants. Having failed to give such notice the appellant cannot complain that he was denied his right to due process.

The appellant's final argument is that there were insufficient facts before the court to justify a modification in the divorce decree by increasing the child support payments. It is well settled in Idaho that a modification of child support payments can be made only where there is shown to be a material, permanent, and substantial change in conditions and circumstances. *Daniels v. Daniels*, 82 Idaho 201, 205–206, 351 P.2d 236, 238–39 (1960). In a divorce action or modification thereof, the amount awarded to a mother for child support rests in the sound discretion of the trial court. *Embree v. Embree*, 85 Idaho 443, 450–51, 380 P.2d 216, 221 (1963). Only where there is a manifest abuse of discretion will the determination of the trial court be interfered with on appeal. *Embree* at 451, 380 P.2d 216. We find no abuse by the trial court here.

The respondent provided the court with the details about her income and the necessity of supporting four individuals with that income. Although she did not set out the facts as to the two boys' actual expenses, the trial court determined that she is unable to meet their reasonable expenses with her current salary and that she stated sufficient information about changed circumstances. Apparently the appellant sought a modification of the divorce decree in 1975 because he was not working and suffering from medical difficulties. Respondent's affidavit reflected that these problems are now solved and he is working full time. In addition, the trial court can take judicial notice of the general decline in the purchasing power of the dollar. *Hooton v. City of Burley*, 70 Idaho 369, 219 P.2d 651 (1950). The boys are now four years older than at the time of the original modification and it was self evident to the trial court that additional funds were necessary to meet their basic needs. The amount requested by the respondent was far less than that awarded in the original divorce decree. This court cannot say that the trial court abused its discretion in making the award or that it is unreasonable in amount under the facts.

The order modifying the divorce decree is affirmed. Costs, including attorney fees, are awarded to respondent.

DONALDSON, C. J., BAKES, J., and HARGRAVES, J. Pro Tem., concur.

BISTLINE, Justice, concurring and dissenting.

The Court's opinion correctly states that where a party has generally appeared in a pending action[1] an order to show cause as mentioned in the rules here involved "is simply a notice of motion." An order to show cause historically has ordinarily been the type of process utilized in the initial proceedings of a new divorce action, where the defendant has not made an appearance. But, where defendant has appeared, he is thereafter subject to the jurisdiction of the court, and a modification can and should be sought simply by serving a proper motion and notice of hearing. It is but a waste of time and money to cause personal service to be made of an order to show cause on a party who is already before the court. All that is required is that a party be advised that his adversary seeks relief of the court, apprising the nature of it, and timely advising when the matter is to be brought before the court.

I am wholly unable to agree with the Court's view that "the appellant cannot complain that he was denied his right to

---

1. Surely it must be generally understood that a divorce action remains pending even after final decree of divorce and property disposition where minor children are involved.

due process." As I mention, it is not a big case, and had there been a proper hearing, the increase of child support from $25 to $75 per month per child probably would not have been appealed. Then again, a proper hearing, with appellant allowed to testify, might have established that the conditions still existed which in 1975 required child support payments to be reduced from $125 per month per child to $25 per month per child. The larger and more compelling issue, however, is the denial of due process. The Court's opinion serves well to establish that although appellant had appeared as required, "the trial court did not allow the appellant to produce any evidence . . . but the trial court considered the issue as presented by the respondent's affidavit . . . ." While I can, albeit not easily, understand the trial court's refusal of appellant's evidence on an interpretation of Rule 6(c)(3), where a trial court necessarily is required to make quick rulings, it is not readily understandable how this Court, with the ample time for reflection and consideration which is a luxury of an appellate court, can reach the same result. The answer, says the Court, is to be found in its Rule 6(c)(3).

The respondent, acting under that rule, and admittedly not having at hand all of the necessary information as to appellant's financial situation which she was supposed to set out under the requirements of yet another rule (Rule 6(c)(2)) prior to the filing of any affidavit by appellant, served notice on appellant that she elected to cross-examine him. The rule is quite explicit in its statement that such notice required appellant's presence at the hearing, and rendered it unnecessary to issue a subpoena for that purpose. And the rule provides for the imposition of sanctions had appellant not appeared as notified.

But appellant *did* appear. There he was, in court, some distance from his home, with counsel, and ready to give testimony to the court which would show his financial condition—there being nothing in the record in that regard whatever.

At the time, in what has to be one of the neatest displays of gamesmanship (which supposedly was relegated to the scrap heap with the adoption of the Idaho Rules of Civil Procedure) respondent advised the trial court that, notwithstanding her notice which compelled appellant to attend and be examined, and the time and cost involved, she had changed her mind and decided not to examine the appellant!

Now, that to my mind was inexcusable, and many are the judges whom I have known who would have ill-countenanced such behavior, and would have required that the examination take place, and in no uncertain terms. But beyond that, here was a trial court being asked to rule on a claim of changed circumstances, with only the scantiest of a record before him. A considered opinion could hardly be expected to result from an entirely one-sided presentation.

But that wasn't the end of it. Not only did the trial court fail to require the respondent to proceed with the examination of the appellant whose presence in court respondent had procured, but the trial court refused appellant's right to be heard. That ruling, which is totally in denial of accepted propositions of due process, is said to be sound because of appellant's failure in not having notified respondent of an election upon his part to give live testimony.

The fault, dear Brutus, lies not in our rules, but in our Court, in the strained interpretation which the Court puts upon Rule 6(c)(3) in order to achieve a position from which it can uphold the denial of due process. The rule serves the general purpose of allowing to either of the parties the election as to whether they will seek to present the motion for modification by affidavits or by live testimony. Even though neither party serves the notice that activates the proceeding going live, the trial court may decide to do so. Where the parties have not elected, the rule makes it discretionary with the court whether it will attempt to reach a determination simply on the basis of the file and affidavits. Here such is not our problem, other than to ob-

serve, as is done both in the Court's opinion and herein, that the trial court made its determination upon a record which hardly can be said to have sufficed as either an adequate or two-sided presentation of the circumstances which allegedly necessitated an increase in child support.

Most will agree that a presentation by affidavits is hardly as fact-presenting as live testimony. Initially, of course, the initiation of a modification proceeding requires an affidavit, or petition as has in years past more often been the case, alleging a change of circumstances, supported by at least enough ultimate factual allegations as justify the contention that there has been a change. Here there was such an affidavit, and I agree with the opinion of the Court wherein the affidavit is held sufficient to require a hearing. I would have no trouble whatever in holding that the trial court abused the discretion vested in him by the rule in not requiring more evidence than that affidavit, especially when both parties were present in court and available to give the court the very information which a court needs and should want.

Be that as it may, it was clearly error and a gross misapplication of the rule to allow respondent the right to change her mind after compelling appellant's attendance, and an exceedingly gross misapplication of the rule to then compound the error by refusing to permit appellant to take the witness stand and present his side of the controversy. Where appellant was required to be present for the giving of live testimony, it would have been a waste of time, paper, and money for appellant to have drafted an affidavit, or to have served a notice that he intended to testify live. He had already been placed on notice that he was required to appear to testify live. It has always been generally understood that, as noted above, a trial court can in its discretion order that the evidence be presented other than by affidavits, and equally well understood that either party may, by serving notice, cause the proceeding to be conducted with the presentation of live witnesses, and that once either party

serves that notice, the proceeding will be so conducted. Nothing in the rule as written requires the giving of notice by both parties.

The rule did not simply materialize, but rather had its genesis in local district court rules, and before that in the statutory procedures on applications for injunction. At hand, from what is now the First Judicial District, is Rule 72, which according to my information was adopted about 1952. It provides:

" *Questions of Fact on Hearings of Orders and Motions—How Presented—Service of Responding Pleadings and Documentary Evidence.* Except in proceedings for modification of decrees of divorce as to custody of children, it will be the practice to hear questions of fact presented by motions and orders upon affidavits or other documentary evidence. Oral testimony in addition may be submitted upon direction or with permission of the Court or Judge. Affidavits and other documentary evidence in opposition to motions and in response to orders shall be served not later than one day before the hearing unless the Court or Judge permits later service.

"On the hearing of such motion or order any party may cross-examine affiants of the adverse party if he has given notice to such party and has produced his affiants as provided by statute for hearings on application for injunction; provided, that an affiant present in court at the hearing may be cross-examined without notice.

"Applications for modification of decrees of divorce as to custody of children will be supported initially by affidavit, but the merits will be determined from oral testimony and other evidence submitted at the hearing."

It is important to observe therein that the party wanting to proceed with a live evidentiary hearing must give notice, and also must produce and submit his affiants for examination. Equally important is the provision that "any affiant present in court

at the hearing may be cross-examined without notice." This makes sense. Even should the trial court conclude that it doesn't need the information readily available from live examination of a witness or party, where that party or witness is there, examination, live from the witness—which is always in more detail and more pertinent than in affidavit form—should take place. The only purpose which the notice requirement serves is to obtain the presence of the adverse party and his affiants.

The statute referred to in Rule 72, set forth above, which formerly governed hearings on application for preliminary injunctions, was I.C. § 8–411; as pertinent here, it provided:

> "[T]he party resisting the application or moving to dissolve the injunction may, by three days' written notice, require the adverse party to produce at the hearing for cross-examination before the court or judge, the affiants of the affidavits upon which he relies for the injunction, or to resist the application for its dissolution; and any party so requiring his adverse party to produce his witnesses at such hearing must himself produce for cross-examination, the witnesses upon whom he relies upon such hearing; and either party may have the same process to secure the attendance of witnesses at such hearing, as upon trial of issue of fact in the district court; and in such case, where the attendance of witnesses shall have been so required, no affidavit shall be read or considered by the court or judge upon such hearing unless the affiant is so produced for cross-examination . . . ."

*Lawrence Warehouse Co. v. Rudio Lumber Co.*, 89 Idaho 389, 405 P.2d 634 (1965) is a case factually much like the one today, and also involved the contention that due process was denied where the appellants appeared at a noticed-up hearing sans any affidavits but ready to present testimony, but were precluded from so doing. Involved was the same proposition as here— that appellants there had failed to give any notice as contemplated by I.C. § 8–411 and could not present testimony. The trial court's determination was made upon the one-sided presentation contained in the respondent's affidavits. As to this procedure this Court stated that no hearing was had:

> "The procedure followed by the court effectively denied defendants their right to be heard, and an opportunity to make a record of their opposition to the injunction.
>
> "Timely notice and an opportunity to be heard are of the essence of due process, and are jurisdictional essentials of a valid judgment. *Leonard v. Leonard*, 88 Idaho 485, 401 P.2d 541 (1965); *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62." 89 Idaho at 398, 405 P.2d at 639.[2]

I am unable to come to a belief that the rules committee, appointed by this Court, and chaired by a member of this Court, in light of *Rudio*, former I.C. § 8–411, and the earlier local rules of the districts, of which Rule 72 above is a good example, ever intended the denial of due process interpretation which the Court today attaches to I.C. R.P. 6(c)(3). A party hailed back into court, ordered to show cause, and compelled to attend at a hearing and subject himself to his adversary's examination, has been denied the right to testify to the very cause he has been ordered to show. Gamesmanship has prevailed over due process for which reason I dissent.

---

2. *Armstrong v. Manzo* was recently cited by the Supreme Court of the United States for the proposition that:

> " 'The fundamental requisite of due process of law is the opportunity to be heard.' . .

The hearing must be 'at a meaningful time and in a meaningful manner.' " *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970).