853 P.2d 615

**Virgil M. YOUNG and Katherine A. Young, Petitioners–Appellants,**

v.

**IDAHO DEPARTMENT OF LAW EN-FORCEMENT (ALCOHOL BEVER-AGE CONTROL DIVISION), Respondent,**

and

**Brent V. HANSEN, Intervenor–Respondent.**

No. 19902.

Court of Appeals of Idaho.

May 26, 1993.

Ringert, Clark Chtd., Boise, for appellants Virgil and Katherine Young. David Hammerquist argued.

Larry EchoHawk, Atty. Gen., Boise, for respondent, Dept. of Law Enforcement. W. Corey Cartwright, Deputy Atty. Gen., argued.

William Collins, Boise, for respondent Brent V. Hansen, appeared but did not participate in oral argument.

WALTERS, Chief Judge.

Virgil and Katherine Young appeal from a summary judgment dismissing their action to compel the Department of Law Enforcement to issue them a retail liquor license. In October, 1991, the Department offered the Youngs a license, but expressly advised that in order to claim the license, they must, within ten days, notify the Department in writing of their intent to accept. When it did not receive written no-

tice from the Youngs within ten days, the Department dropped them from its waiting list and offered the license to another applicant, Brent Hansen.

The Youngs contend on appeal, as they did before the district court below, that they had complied with the notice requirement by notifying the Department within ten *business* days after receiving the Department's letter containing the offer for the license. Alternatively, they argue that they substantially complied with the notice requirement through earlier contacts with the Department. Finally, the Youngs maintain the Department is estopped from denying it had adequate notice of their intent to accept. For the reasons explained below, we affirm.

### Facts

In 1975 the Youngs applied for a retail liquor license and were placed on a waiting list. On July 16, 1991, the Department sent a letter informing the Youngs that, due to population increases, "you are eligible to receive an incorporated city liquor license for the city of Boise in 1992." The letter further stated that in October the Youngs would receive an official letter with instructions; that the Youngs would have ten days from the time of the subsequent letter to inform the Department whether they wished to accept the license; and that they would have ninety days to complete all requirements necessary for the issuance of a 1992 license. After receiving the July 16 letter, the Youngs visited the office of the Department and requested information on the proper conduct of a license holder. They asked for other information and received a booklet on alcohol beverage control enforcement. They also were told the number of applications for state liquor licenses and how many licenses had been issued to date. Later, in mid-August, the Youngs contracted with a commercial realtor to locate an existing business where they could put the liquor license to use. They also hired an attorney. The attorney then contacted the Department to discuss what would be required of the Youngs, who owned no busi-

ness premises at that time, to put a liquor license into operation.

Subsequently, by letter dated October 1, 1991, and received by the Youngs on October 3, the Youngs received official notice that a retail liquor license had become available, and that they were a priority applicant. The notice stated:

> To claim the available liquor license, you must, within ten (10) days of receipt of this letter, notify this office in writing of your intent to accept.
>
> . . . . .
>
> If you fail to notify this office or to complete the application within the time described herein, your name will be removed from the priority list and your money will be refunded.

When it did not receive a response from the Youngs by Wednesday, October 16, the Department sent a letter to the Youngs notifying them that because they had failed to make a timely response to the letter of license availability, their names had been removed from the waiting list and their application fee would be refunded. When the Youngs received the letter the next day, October 17, they immediately informed the Department, by hand-delivered letter and by a telephone call from their attorney, that they indeed wanted the license. The Department advised the Youngs they were too late, and that the license had been offered to the next applicant on its waiting list.

The Youngs filed this action, asking the district court to enjoin the Department from issuing the license to the next applicant, and to issue a writ of mandate compelling the Department to issue the license to them. The court granted a temporary injunction, pending determination of the petition for writ of mandate. The Department then moved to dismiss the Youngs' action under I.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Both parties submitted affidavits, thus converting the motion to a proceeding for summary judgment under I.R.C.P. 56. *See* I.R.C.P. 12(b).[1] After considering the materials and argument submitted, the district court granted the Department's motion and dismissed the action. The Youngs filed this appeal.

### Issues and Standard of Review

The Youngs raise the following issues on appeal:

(1) whether the facts alleged show that the Youngs actually complied with the notification requirements;

(2) whether the facts alleged show that the Youngs substantially complied with the notification requirements; and

(3) whether, under the facts alleged, the Department is estopped from asserting that the Youngs did not comply with its notice requirement.

As noted above, the Department's motion to dismiss was treated and disposed of as a motion for summary judgment under I.R.C.P. 56. Accordingly, the standards applicable to a summary judgment govern our review. On appeal from an order granting summary judgment, we will review the pleadings, depositions, and admissions on file, together with the affidavits, if any, to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Ray v. Nampa School Dist. No. 131*, 120 Idaho 117, 814 P.2d 17 (1991). Standards applicable to summary judgment require the district court, and the appellate court on review, to liberally construe facts in the existing record, and draw all reasonable inferences therefrom, in favor of the party opposing the motion. *Ray*, 120 Idaho at 119, 814 P.2d at 19. However, the existence of disputed facts will not defeat sum-

---

1. Idaho Rule of Civil Procedure 12(b) provides, in part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, *the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,* and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (Emphasis added.)

mary judgment when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to its claim, and on which it will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Garzee v. Barkley,* 121 Idaho 771, 828 P.2d 334 (Ct. App.1992). In such a situation, there can be no "genuine issue of material fact," since the failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

With these standards in mind, we address the issues raised by the Youngs.

### 1. Compliance with the Time Requirement.

The Department's October 1 letter offering a license to the Youngs tracks the language contained in the regulations governing the issuance of retail liquor licenses. Those regulations, promulgated by the director of the Department pursuant to I.C. § 23–901 *et seq.,* provide, in part:

The Alcohol Beverage Control Division shall maintain a priority list of applicants for those cities in which no incorporated city liquor license is available.

. . . . .

When an incorporated city liquor license becomes available Alcohol Beverage Control shall offer it in writing to the applicant whose name appears first on the priority list. If the applicant does not notify the Alcohol Beverage Control Division in writing within ten (ten) days of receipt of the notice of his intention to accept the license, the license shall be offered to the next applicant in priority.

. . . . .

Should the applicant holding first priority refuse or fail to accept the license or to complete the application within the time specified, the applicant shall be dropped from the priority list, the deposit refunded, and the license offered to the applicant appearing next on the list. IDAPA 11.05 C(1). An Idaho statute provides that the time in which any act provided by law is to be done is computed by excluding the first day and including the last day, unless the last is a holiday, and then it is excluded. I.C. § 73–109. Relevant to this case, a "holiday" is defined to include every Sunday and the second Monday in October (Columbus Day). *See* I.C. § 73–108.

Here, the Youngs received the Department's letter offering the license on Thursday, October 3, 1991. The tenth day after October 3 was October 13, a Sunday. The following day was Columbus Day. Thus, the last day for the Youngs to notify the Department was extended to Tuesday, October 15. It is undisputed, however, that the Youngs failed to give the Department written notice of their intent to accept the license by the 15th. The Youngs' own affidavit states that they did not draft the notification letter until October 17, two days later, when they learned their name had been dropped from the waiting list and the license offered to another applicant. Nonetheless, the Youngs assert that the ten-day notification period should be computed by excluding all intervening Saturdays and Sundays. Thus, they continue, by counting only business days, their notice to the Department on October 17, which was the ninth *business* day after they received the Department's letter, was timely. We disagree.

It well established that, in the absence of a manifest expression of intention to the contrary, intervening Sundays and holidays are included in computing a period of time. *See* 86 C.J.S. *Time* § 14(4) (1954); 74 AM. JUR. *Time* § 20 (1974). The Idaho Rules of Civil Procedure expressly provide that, "[w]hen the period of time prescribed or allowed *is less than seven (7) days,* intermediate Saturdays, Sundays and holidays shall be excluded in the computation." I.R.C.P. 6(a)[2] (emphasis added); *see also*

2. This rule applies when "computing any period of time prescribed or allowed by ... any appli- cable statute...." I.R.C.P. 6(a).

*Cather v. Kelso,* 103 Idaho 684, 652 P.2d 188 (1982). However, in the Youngs' case the prescribed period of time was not less than seven days, and thus the provision excluding intervening non-business days from the computation does not apply. In the absence of other authority manifesting an intent to the contrary, the intervening weekend days must be included in computing the ten-day notice period. Consequently, the last day for the Youngs to claim the license was Tuesday, October 15. The Youngs' contention that they complied with the time requirement by submitting written notice to the Department on October 17 therefore is rejected.

### 2. Substantial Compliance

■ The Youngs alternatively argue that their allegations demonstrate "substantial compliance" with the notice required by the Department's letter and IDAPA 11.05 C(1). Specifically, the Youngs assert that their oral communications with the Department—all of which occurred after they learned they were eligible to receive a 1992 liquor license, but before they were offered the license on October 3— provided the Department with either actual or constructive notice that they intended to accept the license. To support their contention, the Youngs rely on the two affidavits of Virgil Young and the affidavit of their attorney. In his affidavits, Mr. Young states that after he and his wife learned they were eligible for a liquor license, they went to the office of the Department where Mr. Young identified himself to two employees behind a counter, made several inquiries, and received a booklet on alcohol beverage control enforcement. However, these facts do not support an inference that the Department employees knew or should have known that the Youngs would accept the license if and when it was offered. Although Mr. Young states that he "understood" that the Department's employees knew he would accept a license, his merely subjective belief is not evidence of what the employees knew.

The affidavit submitted by the Youngs' attorney similarly fails to contain evidence

showing the Department knew or should have known that the Youngs would accept the license when it was offered. The attorney relates only that "prior to October 3, 1991, as attorney for Virgil Young I telephoned Keith Mathews, Assistant Director of [the Department] and spoke specifically with him concerning the nature and the method of legally putting into operation Mr. Young's proposed liquor license. One of the concerns I had was if Virgil Young did not already own a business premises, how should he proceed in promptly putting the liquor license into use." Although the attorney states that the Youngs' acceptance of the liquor license "was a 'given'" in his conversation with Mr. Mathews, he alleges no factual basis for this belief. As such, the affidavit is not evidence that the Department knew or should have known the Youngs' intentions.

Even if we were to accept the doubtful premise that an oral notification of intent to accept, given prior to the time a license is even offered, would fulfill the objectives of the Department's regulation requiring written notice within ten days after receiving the offer—an issue we need not reach in this case—we nevertheless conclude that the facts alleged by the Youngs are insufficient to show that the Department received notice, actual or constructive, that the Youngs intended to accept the license offered on October 3, 1991. Accordingly, we reject the Youngs' argument that they substantially complied with the Department's notice requirement.

### 3. Estoppel

■ Finally, we address whether the Youngs' allegations support their claims of equitable estoppel and quasi-estoppel. The elements of equitable estoppel are (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) the party asserting estoppel did not know or could not have discovered the truth; (3) the false representation or concealment was made with the intent that it be relied upon; and (4) the person to whom the representation was made or from whom the facts were

concealed relied and acted upon the representation or concealment to his prejudice. *Twin Falls Clinic and Hospital Bldg. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982). The Youngs do not allege that the Department made any false statements or concealed material facts. The doctrine of equitable estoppel is therefore inapplicable. '

■ The doctrine of quasi-estoppel, on the other hand, does not require a false representation. Rather, it is a doctrine designed to prevent a party from reaping an unconscionable advantage, or from imposing an unconscionable disadvantage upon another, by changing positions. *See Keesee v. Fetzek,* 111 Idaho 360, 723 P.2d 904 (Ct.App.1986). The doctrine of quasi-estoppel may be invoked against a person asserting a right inconsistent with a position previously taken by him, with knowledge of the facts and his rights, to the detriment of the person seeking to apply the doctrine. *Evans v. Tax Comm'n,* 97 Idaho 148, 540 P.2d 810 (1975); *Treasure Valley Bank v. Butcher,* 121 Idaho 531, 826 P.2d 492 (Ct. App.1992).

■ The Youngs contend that the Department's assertion that they failed to comply with the ten-day written notice requirement is inconsistent with its earlier representations that "the Youngs would have their license." However, the unrebutted evidence in the record demonstrates that the Department consistently maintained that in order to receive a license, the Youngs would have to comply with the ten-day notification requirement. We hold, therefore, that the Youngs' claim of quasi-estoppel also is inapplicable to the facts of this case.

### Conclusion

We conclude the Youngs failed to allege facts to show that they complied with the Department's notification requirement or that the Department is estopped from denying the requirement had been met. The summary judgment dismissing their petition for writ of mandate therefore is affirmed.

Costs to respondent, the Department. No attorney fees on appeal.

SWANSTROM, J. and SILAK, J., Acting Judge, concur.